67250. ELLIOTT v. THE STATE.

QUILLIAN, Presiding Judge.
Tried for bribery and nine counts of violation of the controlled substances and dangerous drug acts, defendant appeals his con-

viction for bribery.

Defendant was a probation officer and Little was one of his probationers. Little was accused of burglary and testified that defendant approached him about fixing the sentence in the burglary. Little testified that defendant told him that he could help Little if Little paid him some money and delivered him some drugs. Little contacted his attorney who informed the district attorney. An investigator wired Little with a concealed radio transmitter and recorded conversations between Little and defendant at three meetings they had. At the second meeting Little gave defendant $1200 supplied by the investigator and at the third meeting Little gave defendant an additional $1300 and a bag of various drugs, also supplied by the investigator. Defendant was arrested immediately after the third meeting, in possession of the drugs and the $1300. The remaining money was found in his home.

Defendant testified that Little approached him and offered to give money and drugs if defendant helped him get out of being sent to prison. He suspected that Little was involved in drug transactions. Without notifying his superiors or any other authorities, he went along with Little to conduct an investigation in order to make a case against Little. He admitted receiving the money and drugs from Little but did not intend to keep them for himself. He was going to turn the money and drugs over to his superiors or an investigator but was arrested before he could do so. He was acquitted of the drug offenses. *Held:*

1. Defendant asserts that the trial court erred by failing to charge clearly and completely on the principles of the law of intent, which was the sole issue in the bribery count, citing cases requiring a sua sponte charge on a sole defense.

Before receiving evidence the trial court gave the jury some general instructions on the law which included that a crime requires the joint operation of action and criminal intent; that no person shall be found guilty of a crime if there was no criminal action or intention; and that a person is not presumed to act with criminal intent which must be found from the words, conduct, demeanor, motive and all other circumstances. The court ascertained that the jury understood the instructions and would abide by them.

In its charge to the jury, the court again gave substantially the same as the foregoing concerning intent, and the elements of the crime of bribery including that any value received by defendant must be "with the purpose of influencing him in the performance of any act related to the functions of his office or employment."

At the conclusion of the charge defense counsel brought to the

court's attention that it had not charged on defendant's defense that he was carrying out a legal investigation, a charge that had not been requested. The court gave counsel the opportunity to submit a written charge, or tell the court what he would like to be charged, or to comment on a proposed charge drawn up by the court. Defense counsel did not avail himself of any of these opportunities, saying that he was not prepared to pass on a charge without having time to study it and think it out, and that it was the court's duty to charge on a sole defense.

Thereupon, the trial court gave the following additional charge: "[T]he court may have overlooked giving you instructions with reference to the specific defenses which this defendant has raised in this case and in that connection I charge you the defendant contends that all his acts in connection with the offenses for which he is charged were performed by him in the course of an investigation into illegal activities on the part of . . . Little, one of the probationers assigned to him for supervision, and for the purpose of bringing the said . . . Little to justice, and were not performed by him with any intent to violate the law by accepting a bribe or coming into unlawful possession of controlled substances or dangerous drugs. These are the contentions of defendant."

Defendant argues that the charge as a whole was not sufficient as it did not give a clear and complete instruction as to the law of intent, citing *Glaze v. State,* 2 Ga. App. 704 (58 SE 1126).

The trial court clearly charged on the issue of defendant's intent, although defense counsel could not or would not at the time inform the court how he wished the issue to be elaborated upon.

*Glaze v. State,* supra, is inapposite. "There is no substantial merit in the complaint that the judge (in the absence of any request to do so) failed to instruct the jury upon the sole issue raised by the defendant upon the trial, to wit, that he had no intention of committing the crime charged (larceny from the house) . . . The court did charge the jury that if the defendant . . . did . . . take [the property alleged], *with intent to steal the same,* he would be guilty as charged. This reference to the defendant's intent to steal was sufficient, in the absence of a request for a fuller charge upon that subject. The facts of this case easily distinguish it from *Glaze v. State,* 2 Ga. App. 704 . . ." *Evans v. State,* 28 Ga. App. 571 (2) (112 SE 732).

Also distinguishable are the other cases cited by defendant where the error was not in failing to elaborate on a charge given but in the failure to give any charge on the sole defense or controlling issue or making only an insufficient passing reference thereto.

As the court did charge on defendant's sole defense of lack of

intent, had he "desired a more specific charge as to any phase of his defense, it should have been made the subject of an appropriate written request." *Thomas v. State,* 99 Ga. App. 25 (5), 27 (107 SE2d 687).

Accordingly, under the circumstances that the charge as a whole sufficiently covered the issue of intent, that defendant had not requested a different charge on intent, and after being given a full opportunity to prepare an additional charge his counsel was unable to even advise the court what language he thought should be charged, we find no merit in this assertion.

2. While the jury was deliberating it sent a note to the judge asking for a transcript of the state's cross-examination of defendant. Without consulting defendant or counsel for either side, the judge replied in writing that their request was not available under the law. The defense became aware of this communication before the verdict but did not bring it to the court's attention until sentencing two weeks later and made no motion concerning it. Error is alleged because neither defendant nor his counsel was notified of the jury's question before the court replied to it.

Whether to allow a jury to hear testimony replayed (*Person v. State,* 235 Ga. 814 (3) (221 SE2d 587)), or to rehear evidence (*Byrd v. State,* 237 Ga. 781 (1) (229 SE2d 631)), is within the discretion of the court. We find no abuse of discretion in the trial court's refusing the jury's request in this case.

Pretermitting whether defendant waived the right to appeal this issue for failure to timely raise or preserve it, we hold as we did in *Stewart v. State,* 165 Ga. App. 428 (2) (300 SE2d 331). There the jury indicated through the bailiff that they were deadlocked and the court, without notifying defense counsel, told them through the bailiff to keep on trying. We recognized that a trial court should not communicate with the jury without knowledge of counsel but found no error, saying: "The communication here clearly did not constitute a charge or recharge. [Cits.] . . . Nor was the communication a colloquy, a '[m]utual discourse; . . . a somewhat formal conference.' [Cits.] Moreover, we do not find the subject communication to be in any manner prejudicial to appellant." Id. at 430.

3. Several enumerations of error pertain to the admission and playing of three tape recordings made of radio transmitted conversations between defendant and Little and the use of transcripts of the recordings made by the state as an aid in following the tapes as they were played.

Some things on the tapes were clearly understandable, others difficult to understand, and some were unintelligible. As the seven

requirements of *Steve M. Solomon, Inc. v. Edgar,* 92 Ga. App. 207 (3) (88 SE2d 167), for admission of the tapes were met, we find that the trial court did not abuse its discretion in admitting them in evidence and permitting them to be played for the jury. "Where the proper foundation for admission of a taped conversation is laid and portions of the conversation are inaudible, it is within the discretion of the trial court to admit the tape. [Cit.]" *Burke v. State,* 248 Ga. 124 (2), 125 (281 SE2d 607).

Because two of the conversations commenced in a building, which apparently prevented intelligible transmissions to be received from the transmitter on Little until they left the building, the trial court refused to permit these unintelligible initial portions of the tapes to be played over defense objection. Defendant argues that the unintelligible portions should have been played as they were relevent to the weight and reliability of the tapes. We find no error in doing this as we agree with the trial court that there was no need to subject the jury to long portions of unintelligible static or gibberish. No harm to defendant appears as the jury was informed by the prosecutor that the initial unintelligible portions would not be played.

Transcripts made by the state were utilized as an aid for the jury to follow the tapes as they were being played; the transcripts were not admitted in evidence however.

The tapes were initially transcribed by a secretary in the sheriff's department who made a draft of what she understood. The investigator who had heard the conversations as they were being recorded and who had operated the recording device then played the tapes against the secretary's draft and made notes thereon of what he heard being said in places where the secretary said she could not understand. The secretary then relistened to the tapes referring to the notes and retyped the transcripts. This process was apparently repeated and changes discussed between the secretary and the investigator. The secretary authenticated the transcripts, testified that they were as correct as they could make them, and that she heard every word she put in the transcript. Counsel for both sides and the trial judge listened to the tapes with the transcripts to determine whether the transcripts were accurate. Counsel at first apparently did not have any difficulty with the accuracy of the transcripts, but the trial court initially questioned their authenticity and correctness. The judge then listened to the tapes with the transcripts again with another judge, and decided that they were sufficiently accurate to allow their use by the jury when the tapes were played.

Defendant contends that use of the transcripts should not have been permitted as they did not meet the foundation requirements of

*Steve M. Solomon, Inc. v. Edgar,* 92 Ga. App. 207 (3), supra, arguing that the transcripts were not accurate enough to be used.

"The admission of a transcript of a tape recording is permissible when a proper foundation has been laid. [Cit.] Proper foundation had been laid (*Solomon, Inc. v. Edgar,* 92 Ga. App. 207 (3), supra). The transcripts were admitted for use by the jurors during the playing of the tapes so that they could more easily follow what was being said and who was speaking. The only question could be whether the transcripts accurately reflected what was recorded on the tapes. The trial judge himself had listened to the tapes, using the transcript offered to the jury as he listened, and he stated to counsel outside the jury's presence: [that he felt they were accurate transcriptions]. [Cit.]" *Brooks v. State,* 141 Ga. App. 725 (9), 736-7 (234 SE2d 541).

The use of the transcripts is within the discretion of the trial judge just as the admission of the tapes is. There being sufficient evidence of their accuracy, the trial court did not abuse its discretion.

Before any of the tapes were played to the jury the trial court instructed the jury that the tapes were in evidence, but the transcripts were not and were to be used only for their guidance while listening to the tapes to clarify portions of the tapes which were difficult to hear and to identify the speakers. "If you perceive any variation, you will be guided solely by the tapes and not by the transcripts. If you cannot determine from the tape what particular words were spoken, you must disregard the transcripts insofar as those words are concerned."

This instruction also was repeated before the jury heard two of the tapes replayed after they had commenced deliberations.

We find no merit in defendant's claims that the foregoing instruction was insufficient to cure the tapes' deficiencies and should have been repeated before each tape was played.

4. Defendant alleges as error that the trial court allowed the jury to rehear portions of two of the tapes in open court after they had commenced deliberations.

Generally, at the jury's request the trial court in its discretion may permit the testimony of a witness to be repeated in open court or be read to the jury by the reporter. *Lahr v. State,* 239 Ga. 813 (3) (238 SE2d 878); *Watkins v. State,* 237 Ga. 678, 681 (229 SE2d 465).

However, the jury is not allowed to take written evidence with them into deliberations. " 'The jury should not be permitted to take with them for consideration in the jury room, depositions, dying declarations, confessions or written statements of the defendant, or other instruments of evidence depending for their value on the credibility of the maker.' . . . Such written testimony may have an unfair advantage over oral testimony by speaking to the jury more

than once." *Royals v. State,* 208 Ga. 78 (2), 81 (65 SE2d 158).

Defendant contends that his tape recorded conversations with Little are the equivalent of writings, and that replaying them to the jury using the transcripts in open court is prohibited as it is the same as taking a written confession into the jury room.

In *Allen v. State,* 146 Ga. App. 815 (3) (247 SE2d 540), we found no error in the replaying in open court of a video tape of defendant selling stolen property to undercover agents where the request therefor was made by the jury after deliberations had started. "Defendant claims that the trial court erred in allowing the jury to view the videotape for a second time after they retired. The videotape did not go into the jury room for use by the jury during their deliberations, but after the jury requested to see it again, it was shown in open court. Defendant argues that under *Shedden v. Stiles,* 121 Ga. 637 (49 SE 719) (1904), it is error to permit answers to interrogatories which have been introduced in evidence to be delivered to the jury after it has retired and therefore it was error to permit the jury to see the videotape again because the videotape would impress upon the minds of the jury that the videotape was more important evidence than the oral testimony for defendant's side. The state argues that this situation is analogous to the jury asking to have certain portions of the testimony read by the court reporter or to have a tape of testimony replayed after the jury has begun its deliberations. [Cits.] We find no unfair advantage to be obtained when the jury views the videotape for a second time under the controlled conditions of open court. It does not present the same harmful situation as permitting certain documents to go out with the jury during their deliberations." Id. at 818.

And in *Owens v. State,* 248 Ga. 629, 631 (284 SE2d 408), where it was held to be harmless error to permit the jury to take a tape of defendant's confession into the jury room, it was stated "that relevant sound recordings with properly laid foundations may be played before a jury and that the court was authorized to permit the jury to rehear the tape recording if done so in open court."

Accordingly, we find no merit in this allegation. As we have found that it was proper for the jury to use the transcripts the first time they heard the tapes, we find no error in their using them for the rehearing of the tapes.

5. As defendant raises grounds contesting the admissibility of his pretrial custodial statements which were not raised during trial, we cannot consider them. *Altman v. State,* 156 Ga. App. 185 (5) (273 SE2d 923). The evidence at the Jackson-Denno hearing authorized the trial court to find that defendant's statements were voluntarily made.

6. The trial court did not err in admitting evidence that marijuana was found in defendant's home.

Because defendant was being tried for numerous counts of possession of controlled substances and dangerous drugs, evidence of his simultaneous possession of marijuana was admissible as a similar crime closely connected to the offenses being tried. "Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson,* 246 Ga. 654 (1), 655 (272 SE2d 321).

7. Remaining allegations of error are either resolved by the foregoing or are non-meritorious.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED NOVEMBER 7, 1983.

*Fred M. Hasty,* for appellant.

*Willis B. Sparks III, District Attorney, Virgil L. Adams, G. F. Peterman III, Assistant District Attorneys,* for appellee.

